# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESLEY LEE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ARDAGH GLASS, INC., et al.,<br><br>　　　　Defendants. | Case No. 1:14-cv-01759-SAB<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND AND REMANDING ACTION TO CALIFORNIA SUPERIOR COURT<br><br>(ECF Nos. 8-10, 25, 26)<br><br>ORDER DENYING DEFENDANT NAVARRO'S MOTION TO DISMISS<br><br>(ECF Nos. 17, 23-24, 27) |

Currently before the Court are Plaintiff Wesley Lee's motion to remand and Defendant Jaime Navarro's motion to dismiss. The Court heard oral argument on Plaintiff's motion to remand on January 14, 2015. Counsel Amanda Whitten appeared telephonically for Plaintiff and counsel Margaret Rosenthal and Diamond Hicks appeared for Defendants Ardagh Glass and Navarro at the January 14, 2015 hearing. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the January 14, 2015 hearing, as well as the Court's file, the Court issues the following order.[1]

///

---

[1] Plaintiff and Defendant Ardagh Glass have consented to the jurisdiction of the Magistrate Judge. (ECF Nos. 12, 13.) Pursuant to the stipulation of the parties, Defendant Navarro consents to the jurisdiction of the Magistrate Judge for the limited purpose of deciding the motion to dismiss without making an appearance in this action. (ECF Nos. 21, 22.)

1

# I.

# BACKGROUND

Plaintiff Wesley Lee began working for the predecessor of Defendant Ardagh Glass on or about July 19, 1984 when he was twenty-one years old. (Compl. ¶ 13, ECF No. 1-1.)[2] Over the years, he learned several different jobs and received increases in his salary. (Id. at 13.) Defendant Navarro was human resources manager at Ardagh Glass and Plaintiff's supervisor. (Id. at ¶ 3.) Plaintiff contends that his employment was wrongfully terminated on or about November 21, 2012, by Defendant Ardagh Glass. (Id. at 14.)

Plaintiff filed a civil suit and reached a settlement agreement under which his employment was reinstated and he returned to work on or about June 22, 2014. (Id. at ¶¶ 14, 15.) On August 31, 2014, Plaintiff complained to his union steward that the manner in which employees were required to relieve each other on certain of Defendant's machines was unsafe. This complaint was passed along to the foreman. (Id. at ¶ 16.)

On September 1, 2014, Plaintiff was assigned to work on a machine that he had not been assigned to in over five years. Although the operations of the machine had changed significantly, Plaintiff was not trained on the updates to the machine and did not feel safe operating it. Plaintiff raised his safety concerns to the union steward and the shop foreman and was told he could go home if he did not feel safe working on the machine. Plaintiff choose to leave and was not informed that this would result in disciplinary action. (Id. at ¶ 17.) When Plaintiff returned to work the next day, he was suspended and then terminated three days later. (Id. at ¶ 18.) At some time, Defendant Navarro asked Plaintiff if he was feeling well. (Id. at ¶ 35.) Defendants told others that Plaintiff was insubordinate, had abandoned his job, and deserved to be terminated. (Id. at ¶ 50.) These statements were republished by Defendant Navarro. (Id. at ¶ 55.)

Plaintiff filed this action in the California Superior Court for the County of Madera on

---

[2] The Court notes that the complaint which is attached to the motion to remand is unsigned. Generally, unsigned documents cannot be considered by the Court, and are stricken from the record on that ground. Fed. R. Civ. P. 11(a); Local Rule 131(b). In this instance, the allegations in the complaint will be considered for the limited purpose of determining if this Court has jurisdiction over the matter.

1 October 9, 2014. Plaintiff's complaint alleges four causes of action against Defendant Ardagh
2 Glass: 1) retaliation in violation of California Government Code section 12940(h); 2)
3 discrimination based on disability in violation of California's Fair Employment and Housing
4 Act; 3) retaliation in violation of California Labor Code section 6311; and 4) wrongful
5 termination in violation of public policy; and 5) a fifth cause of action against Defendants
6 Ardagh Glass and Jaime Navarro for defamation.

7 Defendant Ardagh Glass was served on October 15, 2014. On November 10, 2014,
8 Defendant Ardagh Glass removed the action to the Eastern District of California pursuant to 28
9 U.S.C. § 1331 and 28 U.S.C. § 1332.

10 On November 20, 2014, Plaintiff filed a motion to remand, which was amended on
11 November 21, 2014. On December 12, 2014, Defendant Navarro filed a motion to dismiss. On
12 December 31, 2014, Plaintiff filed an opposition to the motion to dismiss and Defendant Ardagh
13 Glass filed an opposition to the motion to remand. On January 7, 2015, Plaintiff filed a reply to
14 the opposition to the motion to remand. On January 13, 2015, Defendant Navarro filed a reply to
15 the opposition to the motion to dismiss.

**II.**

**MOTION TO REMAND**

18 Plaintiff moves to remand this action to state court on the ground that neither original nor
19 diversity jurisdiction exists and removal of the action to federal court was improper.

**A.     Motion to Remand Legal Standard**

21 Federal courts are courts of limited jurisdiction and only possess that power authorized
22 by the Constitution and statute. Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546,
23 552 (2005). Congress has conferred the district courts with original jurisdiction in all civil cases
24 that arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.
25 Additionally, Congress has provided a neutral forum by granting district courts jurisdiction over
26 civil actions between citizens of different states in which the amount in controversy exceeds a
27 specified amount. Exxon Mobil Corp., 545 U.S. at 552.

28 "[A]ny civil action brought in a State Court of which the district courts of the United

3

States have original jurisdiction may be removed by the defendant . . . to the district court of the United States for the district . . . where such action is pending." 28 U.S.C. § 1441(a).  A notice of removal must be filed within thirty days of receiving the initial pleading setting forth the claim for relief, 28 U.S.C. § 1446(b).

"The removal statute is strictly construed against removal jurisdiction." Provincial Gov't of Marinduque, 582 F.3d at 1087.  If the district court determines that it lacks jurisdiction, the action should be remanded back to the state court.  Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005).

**B.     Lack of Service and Defendant Navarro's Failure to Join in the Removal**

Plaintiff argues that removal was improper because Defendant Navarro did not join in the removal.  Defendant Ardagh Glass argues in their opposition to the motion to remand that the allegations regarding Defendant Navarro are irrelevant because he was not served at the time the action was removed.

1.     Defendant Navarro was not served at the time the action was removed

The Federal Rules of Civil Procedure provide that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.  28 U.S.C.A. § 1446(b)(2)(A).  Since Defendant Navarro had not been served at the time this action was removed, he was not required to join in the removal of the action.  Plaintiff's motion to remand on this basis is denied.

2.     The Court considers the allegations regarding named unserved defendants in deciding whether diversity jurisdiction exists

The forum defendant rule provides that an action may not be removed on the basis of diversity "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  Fed. R. Civ. Proc. § 1441(a).  Although district courts are split on the proper interpretation of the language "properly joined and served" in section 1441(b), Rogers v. Boeing Aerospace Operations, Inc., 13 F.Supp.3d 972, 975 (E.D. Miss. 2014); Standing v. Watson Pharmaceuticals, Inc., No. CV 09-0527 DOC (ANx), 2009 WL 842211, at *3 (C.D. Cal. 2009), the Ninth Circuit has held that "[w]henever federal jurisdiction

4

in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service[,]" Clarence E. Morris, Inc. v. Vitek ("Vitek"), 412 F.2d 1174, 1176 (1969).  This Circuit has "explicitly rejected the argument that '1441(b), by implication, expanded removal jurisdiction to permit removal, despite want of diversity, if a resident defendant whose presence would defeat diversity had not been served.' " Preseau v. Prudential Ins. Co. of America, 591 F.2d 74, 78 (1979) (citing Vitek, 412 F.2d at 1176 n.1); see also Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1266 (9th Cir. 1992) (Vitek "held that a defendant could not ignore an unserved, non-diverse co-defendant in seeking to remove a case to federal court based on diversity").

While Defendant Ardagh Glass argues that the allegations regarding Defendant Navarro are irrelevant as he had not been served at the time of removal, as long as the unserved defendant has been named in good faith, the court is to consider the allegations in the complaint to determine whether diversity jurisdiction exists.  See Fink v. Altare Publishing, Inc., No. 5:13-cv-03720 EJD, 2014 WL 343225, at *3 (N.D. Cal. January 28, 2014) ("[T]he 'properly joined and served' language of § 1441(b) does not permit ignorance of an unserved local defendant's domicile when determining the existence of diversity jurisdiction.").  At the January 14, 2015 hearing, Defendant stated that it expected the Court to consider the allegations against Defendant Navarro in determining whether diversity jurisdiction exists.

**C.     Federal Question Jurisdiction**

Defendant Ardagh Glass removed this action pursuant to 28 U.S.C. § 1331 asserting that the claims are preempted by Section 301(a) of the Labor Management Relations Act ("LMRA") as resolution of the claim will require interpretation of the collective bargaining agreement between Defendant Ardagh Glass and the union representing Plaintiff's bargaining unit.  Plaintiff moves to remand this action on the grounds that the claims do not require interpretation of the collective bargaining agreement and a federal preemption defense does not confer original jurisdiction on the federal court.

///

///

5

1.  <u>Resolution of Plaintiff's claims will not require interpretation of the collective bargaining agreement</u>

Defendant Ardagh Glass argues that federal jurisdiction exists in this action because Plaintiff's section 6311 claim is completely preempted by federal law and deciding the issue will require the Court to interpret the meaning of the collective bargaining agreement. Plaintiff counters that the collective bargaining agreement is irrelevant to his contention that he was terminated for complaining that his employer requested him to do something that was unsafe.

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." <u>Balcorta v. Twentieth Century Fox Film Corp.</u>, 208 F.3d 1102, 1107 (9th Cir. 2000). This allows the plaintiff to be the master of his complaint and avoid federal jurisdiction by relying exclusively on state law. <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1075 (9th Cir. 2005). A federal law defense to a state law claim does not confer jurisdiction on a federal court. <u>Gregory v. SCIE, LLC</u>, 317 F.3d 1050, 1052 (9th Cir. 2003). An exception to this rule exists where a federal law completely preempts the plaintiff's state law claims. <u>Id.</u> A claim based on a preempted state law is considered a federal claim from its inception. <u>Burnside v. Kiewit Pacific Corp.</u>, 491 F.3d 1053, 1059 (9th Cir. 2007).

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). The Supreme Court has concluded that section 301 completely preempts state law claims brought to enforce collective bargaining agreements. <u>Balcorta</u>, 208 F.3d at 1107. This has been expanded to include complete preemption of most state law actions that are "substantially dependent upon analysis of the terms of a collective bargaining agreement." <u>Valles</u>, 410 F.3d at 1075 (internal punctuation and citations omitted).

However, not every claim that requires a court to refer to the language of a collective

6

bargaining agreement is preempted.  Balcorta, 208 F.3d at 1107.  The Supreme Court has distinguished between those claims that require interpretation or construction of the collective bargaining agreement and those that simply require the court to look at the agreement.  Id.  "[I]n the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.' "  Id.  Where the meaning of the contract is not subject to dispute, the fact that the contract will be consulted in the course of the litigation does not require the claim to be extinguished.  Gregory, 317 F.3d at 1053.

In deciding whether federal law preempts state law, the court must first determine whether a right inheres in state law or is grounded in the collective bargaining agreement.  Burnside, 491 F.3d at 1060.  The court is to consider "the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement [and] not whether a grievance arising from 'precisely the same set of facts' could be pursued."  Id. (citations omitted).  The court then decides whether a state law right is "substantially dependent" on the terms of the collective bargaining agreement by deciding whether the claim can be resolved by "look[ing] to" versus interpreting the collective bargaining agreement.  Id.  If resolution of the claim requires interpreting the agreement, it is preempted, but if it can be resolved by merely looking to the agreement, it is not preempted.  Id.  The court may look to the collective bargaining agreement to determine if it contains a clear and unmistakable waiver of a state law right without triggering preemption under section 301.  Id.

Plaintiff's third cause of action alleges that he was terminated when he refused to work on a machine on which he had not been trained and did not know how to operate.  (ECF No. 1-1 at ¶ 40.)  Plaintiff states this is a violation of California Labor Code section 6311 which provides that an employee cannot be laid off or terminated for refusing to work in an environment where a Labor Code violation or violation of a health or safety standard would create a real and apparent hazard to the employee or his fellow employees.  The matter of employee safety of the workplace has long been a matter of prime legislative concern.  Hentzel v. Singer Co., 138 Cal.App.3d 290, 297 (1982).

In Hentzel, the state court found that it requires little analysis to determine that the

legislative purpose underlying the workplace safety regulations would be undermined if employers were able to discharge employees for protesting about working conditions that they reasonably believe would be a hazard to their own health and safety or the health and safety of others.  Id.  In order to achieve the statutory objective of workplace safety, it is required for employees to be free to bring to their employer's attention hazardous conditions so they can be corrected if needed.  Id.  The public policy implicated extends beyond the question of fairness to the individual employee, but concerns protection for employees against adverse employment action for conduct which deserves to be encouraged to promote public policy.  Id.

Section 1 of Article 31 of the collective bargaining agreement states that:

> It is the intent of the parties that no employee shall be required to work under conditions which are unsafe or unhealthy and that an employee who believes that he is being so required shall have the right to notify his supervisor and shop steward of such condition, which the supervisor and shop steward shall investigate immediately.  If the existence of such unsafe or unhealthy condition is disputed by the supervisor or shop steward, the Management Safety Representative and a Union member of the Plant Safety Committee shall be notified immediately and they shall investigate the condition and determine whether or not it is unsafe or unhealthy.  If the issue is not resolved, the employee shall have the right to present a grievance to the Department Head.  After a work condition is determined to be unsafe or unhealthy, safety work orders shall be processed immediately.

(Union Shop Contract, Production and Maintenance Department Workers 138-39, ECF No. 1-4.)

Labor Code Section 6311 provides that an employee cannot be terminated or laid off for refusing to work in unsafe conditions.  The collective bargaining agreement states that employees are not required to work under conditions that are unsafe or unhealthy.  Additionally, although Defendant Ardagh Glass claims that it was allowed to decide the safety standards to be applied in the workplace, the bargaining agreement provides that "[t]he minimum industry standards shall remain binding for the duration of the Contract."  (ECF No. 1-4 at 141.)  At the January 14, 2015 hearing, Defendant stated that the statutory provisions are the minimum standards that are required to be adhered to in the industry.

The collective bargaining agreement does not contain clear and unmistakable language waiving the state right, so there is no issue of whether the collective bargaining agreement waived the employee's rights pursuant to section 6311, assuming such a waiver would be

8

1  permissible. See Livadas v. Bradshaw, 512 U.S. 107, 123, 125 (1994) ("§ 301 cannot be read
2  broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state
3  law"); Valles, 410 F.3d at 1076 ("§ 301 preemption is not designed to trump substantive and
4  mandatory state law regulation of the employee-employer relationship").

5        The dispute here does not involve whether the working conditions Plaintiff was subjected
6  to were allowed under the collective bargaining agreement.  Plaintiff is alleging that he was
7  terminated for refusing to work in an environment where a Labor Code violation or violation of a
8  health or safety standard would create a real and apparent hazard to himself or his fellow
9  employees.  Specifically, Plaintiff alleges that he was terminated for refusing to work on a
10 machine on which he was not trained. (ECF No. 1-1 at ¶¶ 16, 17, 18, 20.)  Plaintiff contends that
11 the Labor Code requires employees to be trained on the machinery that they operate for safety
12 reasons.  On the facts alleged by Plaintiff in the complaint, his retaliation claim under section
13 6311 is not grounded in the collective bargaining agreement, but arises out of the law of the
14 state.

15       Defendant Ardagh Glass contends that resolution of the claim requires interpretation of
16 the provision of the collective bargaining agreement to determine the standard of care regarding
17 employee safety.  However, for complete preemption to occur the need to interpret the collective
18 bargaining agreement must inhere in the nature of Plaintiff's claims. Valles, 410 F.3d at 1076.
19 Defendant argues that the collective bargaining agreement determines the training standards that
20 they must adhere to with their employees, however, this argument addresses the defense that will
21 be offered at trial.  The issue of whether the conditions Plaintiff was subjected to violated the
22 Labor Code does not require the trier of fact to look to, much less interpret, the collective
23 bargaining agreement.  The fact that Defendant intends to use the collective bargaining
24 agreement to argue that the training provided was sufficient does not preempt Plaintiff's claims
25 in this action.  If a claim is plainly based in state law, the fact that Defendants will refer to the
26 collective bargaining agreement in mounting their defense does not mandate preemption. Id.;
27 Cramer v. Consolidated Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001).

28       Plaintiff's claim is not directly founded on rights contained in the collective bargaining

agreement, nor does resolution of the retaliation claim require interpretation of the collective bargaining agreement. Plaintiff's claim is independent of the collective bargaining agreement and not subject to § 301 preemption.

Next, the Court shall consider the parties' arguments regarding whether section 301 substantially preempts the state law.

### 2. Plaintiff's claims are not substantially preempted by section 301

Plaintiff also contends that the state law discrimination claims are not substantially preempted by section 301 under the three part test used by the Ninth Circuit in Miller v AT&T Network Systems, 850 F.2d 543, 548 (9th Cir. 1988) ("the Miller test"). Defendant counters that substantial preemption under the Miller test is satisfied.

A state law is not preempted by section 301 if the rights conferred by the statute can be upheld without interpreting the terms of the collective bargaining agreement. Miller, 850 F.2d at 545-46. Therefore, a nonnegotiable state-law right that is independent of any right established by contract is not preempted by section 301. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985). "A right is nonnegotiable if the state law does not permit it to be waived, alienated, or altered by private agreement." Miller, 850 F.2d at 546. Determining whether the right is "independent of any right established by contract" is more difficult. "Because section 301 'does not grant the parties to a collective-bargaining agreement the ability to bargain for what is illegal under state law,' only 'state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are preempted.' " Id. at 547 (citations omitted).

To determine whether the state law is preempted under section 301, the Ninth Circuit directs us to "consider: (1) whether the [collective bargaining agreement] contains provisions that govern the actions giving rise to a state claim, and if so, (2) whether the state has articulated a standard sufficiently clear that the state claim can be evaluated without considering the overlapping provisions of the [collective bargaining agreement], and (3) whether the state has shown an intent not to allow its prohibition to be altered or removed by private contract." Id. at 548. "A state law will be preempted only if the answer to the first question is 'yes,' and the

1 answer to either the second or third is 'no.' ". Id.

2     The California Occupational Safety and Health Act ("Cal/OSHA")سets minimum
3 standards that all employers must comply with. Plaintiff's claim is that he was terminated after
4 he refused to work under conditions that violated these minimum standards. The collective
5 bargaining agreement provides that minimum industry standards are binding for the duration of
6 the contract. In this instance, the collective bargaining agreement provisions do not govern the
7 claim. However, even if Defendants were correct in arguing that the answer to the first question
8 is "yes," Defendant's argument that the remaining Miller prongs are met fails.

9     The purpose of Cal/OSHA is to assure safe and healthful working conditions for all of the
10 working men and women in California by, as relevant here, "authorizing the enforcement of
11 effective standards, assisting and encouraging employers to maintain safe and healthful working
12 conditions. . . ." Cal. Lab. Code § 6300. The Occupational Safety Division ("the Division")
13 "has the power, jurisdiction, and supervision over every employment and place of employment
14 in [California], which is necessary to adequately enforce and administer all laws and lawful
15 standards and orders, or special orders requiring such employment and place of employment to
16 be safe, and requiring the protection of the life, safety, and health of every employee in such
17 employment or place of employment." Cal Lab. Code § 6307. This allows the Division to
18 declare what safety devices, safeguards, or other means or methods of protection are required to
19 keep employees and places of employment safe; enforce the Health and Safety Code standards
20 and orders, and require acts to protect the life and safety of employees and the workplace. Cal.
21 Lab. Code § 6308.

22     Specifically, as relevant here, the Labor Code provides that an employee cannot be
23 retaliated against for reporting safety violations or refusing to work in violation of the health and
24 safety standards. The second question of the Miller test queries whether the state has articulated
25 a sufficiently clear standard. Cal/OSHA establishes standards that must be met to comply with
26 California law. The regulations provide that "employees whose work operations may be in an
27 area where energy control procedures may be utilized, shall be instructed about the prohibition
28 relating to attempts to restart or reenergize machines or equipment which are locked out or

1  tagged out.  8 C.C.R. § 3314(l).³  This state standard requiring employees to be trained is
2  sufficiently clear so that the claim can be evaluated without considering the provisions in the
3  collective bargaining agreement that allow Defendant to make workplace safety decisions.
4  Defendant cannot adopt safety standards that would violate Cal/OSHA; therefore, the collective
5  bargaining agreement need not be considered to resolve the claims in this action.

6  While Plaintiff argues that the Ninth Circuit has repeatedly upheld anti-discrimination
7  laws using the Miller test, and Defendant argues that California has legislated to preserve state
8  authority in areas involving minimum labor standards but expressly allows collective bargaining
9  on the issue of implementation of policies to effectuate workplace safety standards, neither party
10 has provided any authority to support their position.  Cal/OSHA requires every employer to
11 provide a workplace and employment that is safe and healthful for its employees.  Fernandez v.
12 Lawson, 31 Cal.4th 31, 36 (2003).  Every employer and employee must comply with the
13 occupational safety and health standards and Cal/OSHA violations are punishable by civil and or
14 criminal penalties.  Cal. Lab. Code § 6407; Cortez v. Abich, 51 Cal.4th 285, 291 (2011).

15 Based upon the plain language of the statute and the legislative purpose underlying the
16 workplace safety regulations, the Court finds that the state has shown an intent not to allow the
17 Health and Safety regulations to be altered or removed by private contract.  Therefore, the
18 answer to the third question also weighs against preemption.  Upon considering the Miller test in
19 this instance, the Court finds that Plaintiff's retaliation claims in this action are not preempted by
20 section 301.

21 Accordingly, the Court finds that the claims in this action do not arise under the
22 Constitution, laws or treaties of the United States and federal question jurisdiction under section
23 1331 does not exist.⁴

24  **C.  Diversity Jurisdiction**

25 Defendant Ardagh Glass has alternately removed this action on the grounds of diversity

---

[3] Plaintiff cites 8 C.C.R. 3317(l), however, the Court assumes that this was an error as there is no section 3317(l).

[4] Defendant argues in a footnote that Plaintiff's defamation claims are preempted to the extent that they are based on any alleged statements in the course of Union proceedings regarding Plaintiff's performance and termination. However, there are no allegations in the complaint that any alleged defamatory statements were made in such context.  Defendant has not met its burden of showing that section 301 preempts Plaintiff's claims in this action.

jurisdiction. District courts have been conferred original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a); Exxon Mobil Corp., 545 U.S. at 552. This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted). For the purposes of establishing diversity of citizenship, a corporation is deemed to be a citizen of every state in which it has been incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In determining whether the removal was proper, the court is to consider the pleadings filed at the time of removal. Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1085 n.5 (9th Cir. 2009); Williams v. Costco Wholesale Corp., 471 F.3d 975, 976 (9th Cir. 2006); Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1426 n.12 (9th Cir. 1989).

There is no dispute that complete diversity exists between Plaintiff and Defendant Ardagh Glass. Plaintiff moves to remand this action as complete diversity does not exist because Plaintiff and Defendant Navarro are both residents of California. Defendant Ardagh Glass does not dispute that Defendant Navarro's presence in this action will destroy diversity jurisdiction, but argues that he is a sham defendant fraudulently joined in this action.

        1.        Fraudulent Joinder

An exception to the requirement of complete diversity exists where a defendant has been fraudulently joined to defeat diversity. Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001). "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is deemed fraudulent." Hamilton Materials, Inc. v. Dow Chemical Corp., 494 F.3d 1203, 1206 (9th Cir. 2007) (quoting McCabe v. General Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987)). Generally to decide if a cause of action is stated, the court looks to the pleadings, but where fraudulent joinder is at issue the court will consider facts outside to the pleading to determine if joinder is fraudulent. Ritchey v. Upjohn Drug Co., 139 f.3d 1313, 1318 (9th Cir.

1998). Joinder is not fraudulent so long as the plaintiff is entitled to relief against the defendant on any theory. Sessions v. Chrysler Corp., 517 F.2d 759, 760-61 (9th Cir. 1975). Where joinder is deemed fraudulent, the defendant's presence is ignored for the purposes of determining diversity. Morris, 236 F.3d at 1067. The claim of fraudulent joinder must be supported by "clear and convincing evidence." Hamilton Materials, Inc., 494 F.3d at 1206.

In this procedural context, where Defendant Ardagh Glass removed the action to federal court and Plaintiff seeks to remand the action back to state court, Defendant Ardagh Glass bears the burden of demonstrating fraudulent joinder. Hunter v. Philip Morris USA, 582 F.3d 1039, 1044 (9th Cir. 2009); Bertrand v. Aventis Pasteur Laboratories, Inc., 226 F. Supp.2d 1206, 1212 (D. Ariz. 2002) ("The party alleging fraudulent joinder bears the burden of proving the alleged fraud."). Defendant Ardagh bears the "heavy burden" of overcoming the "strong presumption against removal jurisdiction" and the "general presumption against fraudulent joinder." Hunter, 582 F.3d at 1046.

In determining whether joinder is fraudulent, the Ninth Circuit has described the process as a "summary inquiry":

> ..."a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recover against the in-state defendant' [and] 'the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."

Hunter, 582 F.3d at 1044 (quoting Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573-74 (5th Cir. 2004)); see also Huber v. Tower Group, Inc., 881 F. Supp. 2d 1195, 1200 n.4 (E.D. Cal. 2012); Amarant v. Home Depot U.S.A., Inc., No. 1:13-cv-00245-LJO-SKO, 2013 WL 3146809, at *11 (E.D. Cal. Jun. 18, 2013)).

To meet the burden of demonstrating fraudulent joinder, a defendant must demonstrate that there is no possibility that the plaintiff may prevail on the cause of action against the in-state defendant. See Plute v. Roadway Package System, Inc., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001). Therefore, Defendant Ardagh Glass bears the burden of demonstrating that removal jurisdiction exists because Plaintiff's claims against Defendant Navarro fail. The only claim asserted in the complaint against Defendant Navarro is for defamation. Accordingly, the Court

will examine the defamation claim to determine if Defendant Navarro is fraudulently joined in the complaint.

2. Discussion

"The tort of defamation 'involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage.' " Taus v. Loftus, 40 Cal.4th 683, 720 (2007) (quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 529, p.782).

a. **Failure to state a claim**

Defendant Ardagh Glass contends that the statements made by Defendant Navarro are covered by the common interest privilege contained in California Civil Code § 47. This privilege will be discussed in further detail below. As relevant here, the privilege will not apply if Defendant Navarro made the statements with malice; and Defendant Ardagh Glass argues that Plaintiff's conclusory statements regarding malice are insufficient to state a claim.

"[M]alice has been defined as 'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.' " Brown v. Kelly Broadcasting Co., 48 Cal.3d 711, 723 (1989) (quoting Argarwal v. Johnson, 25 Cal.3d 932, 944 (1979)). "Malice may be established by showing the publisher of a defamatory statement lacked reasonable grounds to believe the statement was true, and therefore acted with a reckless disregard for the rights of the person defamed." Kashian v. Harriman, 98 Cal.App.4th 892, 931 (2002) (citing Cuenca v. Safeway San Francisco Employees Fed. Credit Union, 180 Cal.App.3d 985, 997 (1986)).

Defendant relies on this Court's recent decision in Duong v. ITT Educational Services, Inc., No. 1:14-cv-01257-AWI-SAB, 2014 WL 4634998 (E.D. Cal. Sept. 10, 2014), to support their position that Plaintiff has failed to state a claim for malice. In Duong, as here, the defendants argued that the plaintiff's allegations of malice were boilerplate and conclusory. Id. at *5. The court found that:

> Looking at the allegations as a whole, the Plaintiff's complaint paints a picture whereby Hopkins and Russell deliberately fabricated accusations damaging to Plaintiff's reputation in retaliation for Plaintiff filing a complaint accusing Hopkins and Mr. Mouavangsou of harassing Plaintiff. Thus, Hopkins and Russell's actions fall squarely within the definition of "malice": a state of mind

>arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person.

Id. Similarly here, Plaintiff's complaint alleges that Defendant Navarro knew the statements that he was terminated because he was insubordinate and had abandoned his job were untrue and that Defendant Navarro made the false statements to injure Plaintiff and cover up his illegal termination.

Plaintiff's complaint avers that he at all times performed his duties in a satisfactory manner throughout his employment. (ECF No. 1-1 at ¶ 13.) Plaintiff was terminated and filed a lawsuit alleging disability discrimination. (Id. at ¶ 14.) The lawsuit was settled and he returned to work in June 2014. (Id. at ¶ 15.) On August 31, 2014, Plaintiff complained to his union steward that the manner in which employees were required to relieve each other on machines was not safe. (Id. at ¶ 16.) The next day Plaintiff informed his supervisor he did not feel safe because he had not been trained on the machinery to which he had been assigned. (Id. at ¶ 17.) Plaintiff left after his supervisor informed him that he had the right to go home if he did not feel safe. (Id.) When Plaintiff returned to work the following day he was placed on leave and then his employment was terminated. (Id. at ¶ 18.)

In his complaint, Plaintiff alleges that after he was terminated for refusing to work due to an unsafe condition, Defendant Navarro claimed that he was terminated for job abandonment and insubordination. (Id. at ¶ 18.) Defendant Navarro knew about Plaintiff's previous medical leave, disability, and lawsuit. (Id. at ¶ 19.) Defendants told others, including subsequent potential employers, that Plaintiff was insubordinate, had abandoned his job, and deserved to be terminated when he was in fact a competent employee who was not insubordinate and did not abandon his job.[5] (Id. at ¶ 50.) Plaintiff contends that these reports were knowingly false, unprivileged communications that injured his personal, professional, and business reputation. (Id. at ¶ 51.) Plaintiff states that Defendant Navarro has republished and continues to republish

---

[5] Defendant Ardagh Glass argues that the allegations directed at all defendants are not sufficient to state a claim against Defendant Navarro. However, the fact that the allegations are directed at all defendants does not preclude the court from determining whether there is any possibility Plaintiff could prevail on a claim under state law against Defendant Navarro. See Smith v. Southern Pac. Co., 187 F.2d 397, 401 (9th Cir. 1951) ("No specific charge in the complaints refer to [defendant] alone. We have no doubt that the complaints as they stand would be subject to a motion to make more definite and certain. But this is not the test in removal cases").

1  these false statements with the intent to injure Plaintiff.  (Id. at ¶¶ 55, 57.)  Plaintiff alleges that
2  these false statements were made with animus, hatred, ill will and an intent to vex, harass, annoy
3  and injure Plaintiff in order to justify Defendants' unlawful and cruel actions.  (Id. at ¶ 61.)

4        Here, as in Duong, viewing the complaint as a whole, Plaintiff alleges that he was
5  terminated due to the previous incident that resulted in a lawsuit which was settled, his disability
6  that resulted from the previous incident, his complaints that the manner in which employees were
7  required to relieve each other on machines was unsafe, and for leaving work after his supervisor
8  informed him he could go home when he complained that it was not safe for him to work on a
9  machine that he had not been trained to operate.  Plaintiff contends that Defendant Navarro was
10 aware of this and made false statements to third parties that Plaintiff was terminated for job
11 abandonment and insubordination knowing that Plaintiff was in fact terminated in retaliation for
12 refusing to work due to unsafe working conditions.

13       Plaintiff can establish malice by showing that Defendant Navarro "lacked reasonable
14 grounds to believe the statement was true, and therefore acted with a reckless disregard" for
15 Plaintiff's rights.  Kashian, 98 Cal.App.4th at 931.  Plaintiff's allegations are sufficient to allow
16 the Court to reasonably infer that Defendant Navarro is liable for the misconduct alleged.
17 Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Even where Plaintiff has demonstrated "only a
18 slight possibility of a right to relief[,] . . . the jurisdictional inquiry ends.  Hartley v. CSX
19 Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999)  Defendant has not met its burden of showing by
20 clear and convincing evidence that, to the extent the allegations are deficient, Plaintiff cannot
21 allege facts to state a claim for defamation against Defendant Navarro.

22       **b.**    **Privilege**

23       Defendant Ardagh Glass also argues that Plaintiff cannot state a claim for defamation
24 because any statements made are covered by the conditional privilege under California Civil
25 Code § 47 where the communicator and the recipient have a common interest.  Section 47 states:

26     A privileged publication or broadcast is one made:
    ...
27     (c)    In a communication, without malice, to a person interested therein, (1) by
    one who is also interested, or (2) by one who stands in such a relation to the
28     person interested as to afford a reasonable ground for supposing the motive for

17

the communication to be innocent, or (3) who is requested by the person interested to give the information. This subdivision applies to and includes a communication concerning the job performance or qualifications of an applicant for employment, based upon credible evidence, made without malice, by a current or former employer of the applicant to, and upon request of, one whom the employer reasonably believes is a prospective employer of the applicant. This subdivision authorizes a current or former employer, or the employer's agent, to answer whether or not the employer would rehire a current or former employee. This subdivision shall not apply to a communication concerning the speech or activities of an applicant for employment if the speech or activities are constitutionally protected, or otherwise protected by Section 527.3 of the Code of Civil Procedure or any other provision of law.

Cal. Civ. Code § 47.

"The legislative history of section [47(c)] indicates the Legislature intended to codify the narrow common law privilege of common interest" which "applied to a narrow range of private interests" where "the interest protected was private or pecuniary; the relationship between the parties was close, e.g., a family, business, or organizational interest; and the request for information must have been in the course of the relationship." Brown, 48 Cal. 3d at 727. This privilege protects communications made in good faith on a subject in which the speaker and hearer shared an interest or duty. Kashian, 98 Cal.App.4th at 914.

While Defendant argues that any statements made to potential employers would be covered by the common interest privilege, the Court need not decide this issue. Defendant conceded at the January 14, 2015 hearing that the common interest privilege would not apply if the complaint properly pled facts of malice. Plaintiff has provided sufficient factual detail at the pleading stage for the Court to infer that Defendant Navarro knowing made false statements and at the least acted with reckless disregard for Plaintiff's rights.

### c. Declaration of Defendant Navarro

Defendant Ardagh Glass submits the declaration of Defendant Navarro stating that he has not provided any information to any third party who did not have a common interest regarding Plaintiff. (ECF No. 25-1.) The Court recognizes that Defendants are permitted to present facts outside the pleadings which show that joinder was fraudulent. Ritchey, 139 F.3d at 1318. However, Defendants must demonstrate fraudulent joinder by clear and convincing evidence. Hamilton Materials, Inc., 494 F.3d at 1206.

Defendant bears the burden of identifying discrete and undisputed facts that demonstrate that Plaintiff fails to state a defamation claim against Defendant Navarro. Hunter, 582 F.3d at 1044-46. Even though the Court may consider the declaration of Defendant Navarro in deciding this motion, it is insufficient to satisfy Defendant's burden. Defendant Navarro's declaration merely shows that the facts alleged in this action are in dispute. If Defendant is able to prove these disputed facts it would disprove Plaintiff's claim. However, this is not sufficient to justify removal based upon diversity jurisdiction and fraudulent joinder at this stage. Otherwise, any defendant in any diversity action could defeat diversity jurisdiction by submitting a declaration refuting Plaintiff's allegations. Defendant has failed to meet the burden of establishing that Defendant Navarro was fraudulently joined in this action. Therefore, this action must be remanded to the state court.

## III.

## MOTION TO DISMISS

Defendant Navarro moves to dismiss the allegations in the complaint against him due to insufficient service of process as he was served with a state court subpoena after this action was removed to federal court. Further, Defendant Navarro contends that the defect in service was substantial and the dismissal should be without leave to amend. Plaintiff counters that the remedy in this instance is to issue a federal summons.

As this Court has found that it does not have jurisdiction and is remanding this action to the State court, Defendant Navarro's motion to dismiss shall be denied as moot.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, federal jurisdiction does not exist in this action under 28 U.S.C. § 1331 or 28 U.S.C. § 1332.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand, filed November 20, 2014, is GRANTED;

2. Defendant Navarro's motion to dismiss, filed December 12, 2014, is DENIED;

///

3. This matter is REMANDED to the California Superior Court for the County of Madera; and

4. The Clerk of the Court is DIRECTED to close this action.

IT IS SO ORDERED.

Dated: **January 20, 2015**

UNITED STATES MAGISTRATE JUDGE